UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

J<small>ACK</small> C. B<small>IERI</small>, III,

    Plaintiff,    Case No. 1:20-cv-415

v.          Honorable Paul L. Maloney

R. R<small>EWERTS</small> et al.,

    Defendants.
_____/

## OPINION

    This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

    Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Rewerts, Winger, Dewald, Becher, Hoffman, John Doe #1, Shaw, Coffey, and John Doe #2.  The Court will also dismiss, for failure to state a claim, all claims against the remaining Defendants except for Plaintiff's claim that Defendants Anderson and Fuller violated Plaintiff's Eighth Amendment rights by their deliberate indifference to a risk of harm to

Plaintiff when they returned Plaintiff to the general population and Plaintiff's claim that Defendant Holmes was deliberately indifferent to Plaintiff's serious medical needs.

## Discussion

### I.  Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the G. Robert Cotton Correctional Facility (JCF) in Jackson County, Michigan. The events about which he complains, however, occurred at the Carson City Correctional Facility (DRF) in Montcalm County, Michigan, during a three-week period beginning on September 21, 2018. Plaintiff sues a number of MDOC employees from DRF: Warden R. Rewerts; Assistant Deputy Warden J. Winger; Lieutenant Unknown Dewald; Grievance Coordinator L. Becher; Resident Unit Manager W. Anderson; Assistant Resident Unit Counselor Unknown Hoffman; Inspector John Doe #1; Sergeant Unknown Shaw; Corrections Officers A. Fuller, Unknown Coffey, and John Doe #2; and Doctor Unknown Holmes.

Plaintiff alleges that he was involved in a fight with a prison gang member while he was working in the kitchen at DRF on September 21, 2018. He was placed in segregation. Defendants Anderson and Fuller asked Plaintiff several times if he wanted to return to general population. Plaintiff told them he did not want to return to general population because he feared for his safety, expecting retaliation from other gang members.

On September 24, 2018, Defendants Anderson and Fuller asked Plaintiff to return to general population. They told Plaintiff that they lacked bed space in segregation and that if he refused to return to general population, they would issue a ticket for disobeying a direct order. Plaintiff refused; Fuller issued Plaintiff a misconduct ticket.

On September 25, 2018, Anderson and Fuller returned and told Plaintiff he was moving back to general population. Plaintiff told them he feared for his safety.

2

Plaintiff reports that he was placed in a cell with an inmate with "gender identity disorder."[1]  On September 28, another inmate, inmate Jones, knocked on his cell door and inquired why Plaintiff was in general population while the unknown inmate's colleague—the gang member with whom Plaintiff fought on September 21—was bumped up to a higher security level because of the fight.  Plaintiff showed him the paperwork regarding the fight.  The inmate threatened Plaintiff, directing him to get off the yard and out of the unit.

Later that day, inmate Jones returned with another inmate.  Plaintiff opened the cell door.  The other inmate, Mattlock, forced his way into the cell and fought Plaintiff for three to four minutes.  Jones served as a lookout.

After Jones and Mattlock left, Plaintiff cleaned up; left his cell, despite being on top-lock and loss-of-privileges for the misconduct ticket; and called his aunt and uncle to inform them what happened.  Plaintiff's aunt and uncle called the prison and reported the assault.  Plaintiff notes that at the time of the September 28 assault, there were three rookie corrections officers on duty, including Defendants Coffey and John Doe #2.

Following his relatives' report of the assault, Plaintiff was called out to the control center.  He spoke with Defendant Dewald while Defendant Shaw and another officer watched behind a glass barrier.  Plaintiff told Dewald that he wanted to report the incident to the state police.

Shaw and the unknown officer watched the video of the incident and identified Plaintiff's assailants.  Shaw and Dewald directed Plaintiff to write up the events of September 28; but, they ignored Plaintiff's requests that the matter be reported to the state police.  A nurse

---

[1] "Gender identity disorder" has been removed from the Diagnostic and Statistical Manual of Mental Disorders (DSM-V); it has been replaced with "gender dysphoria."  *See Miller v. Stevenson*, No. 1:18-cv-702, 2018 WL 3722164, at *2 n.1 (W.D. Mich. Aug. 6, 2019).  The Court will use that term.

examined Plaintiff, walked Plaintiff to healthcare, took pictures of Plaintiff's injuries, and told Plaintiff she would inform the doctor regarding Plaintiff's complaints. She gave him Tylenol.

Plaintiff again asked if the state police would be called. He was told the prosecuting attorney would not prosecute a simple prison assault and that Dewald and Shaw would handle it.

Plaintiff was then escorted to segregation where he came face-to-face with Jones. Plaintiff remained in segregation for about two weeks. He was treated with Motrin or Tylenol. While in segregation, Plaintiff wrote to the warden, John Doe #1, Anderson, Becher, and Winger about the failure to file charges with the state police. None of these parties responded.

Plaintiff complained to Defendant Doctor Holmes about neck and shoulder pain following the September 21 fight, but Plaintiff was not taken to the hospital or x-rayed. The doctor indicated that he felt Plaintiff's head injury was not serious. Plaintiff never saw the doctor after that initial examination.

On October 13, 2018, Plaintiff was transferred to the Lakeland Correctional Facility in Coldwater, Michigan. In the months that followed, he was eventually offered appropriate diagnostic testing and treatment for his injuries. He continues to suffer pain and notes that he will eventually have to undergo surgery.

Plaintiff claims that Defendants exposed him to a substantial risk of serious harm when they returned him to the general population on September 25, 2018, in violation of Plaintiff's Eighth Amendment rights. Plaintiff claims that Defendants violated his Eighth Amendment and Fourteenth Amendment rights by failing to pursue charges against the inmates who assaulted Plaintiff on September 28. Plaintiff claims further that Defendants violated his Eighth Amendment rights by housing him with an inmate with gender dysphoria from September 25 to September 28. Plaintiff claims that Defendant Holmes was deliberately indifferent to Plaintiff's serious medical

needs in violation of Plaintiff's Eighth Amendment rights. Finally, Plaintiff claims that the restrictions he suffered while housed in segregation violated his Eighth Amendment rights and his due process rights under the Fourteenth Amendment.

Plaintiff seeks compensatory and punitive damages.

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## III.   Placement in segregation

Plaintiff claims that his time in segregation—from September 21 to 25 and from September 28 to October 13—violated his constitutional rights. As a preliminary matter, it is somewhat disingenuous for Plaintiff to complain that Defendants violated his constitutional rights by making him leave segregation to go to the general population and then also claim that Defendants violated his constitutional rights by making him stay in segregation. Nonetheless, the Court will consider Plaintiff's allegations under the Eighth and Fourteenth Amendments.

To establish an Eighth Amendment claim, the prisoner must show that he was deprived of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Conditions of confinement that are restrictive or even harsh, but are not cruel and unusual under contemporary standards, are not unconstitutional. *Id.* Thus, federal courts may not intervene to remedy conditions that are merely unpleasant or undesirable.

Placement in segregation, is a routine discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347; *see also Jones v. Waller*, No. 98-5739, 1999 WL 313893, at *2 (6th Cir. May 4, 1999). Although it is clear that Plaintiff might be denied certain privileges as a result of placement in segregation, he does not allege or show that he was denied basic human

6

needs and requirements. The Sixth Circuit has held that without a showing that basic human needs are not met, the denial of privileges as a result of segregation cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008). Moreover, Plaintiff cannot bring an Eighth Amendment claim for emotional or mental damages because he does not allege a physical injury resulting from his stay in segregation. *See* 42 U. S.C. §1997e(e); *see also Hudson*, 503 U.S. at 5; *Harden-Bey*, 524 F.3d at 795. As a result, Plaintiff fails to state an Eighth Amendment claim based on his brief stay in segregation.

Plaintiff also suggests that his due process rights were violated by his placement in segregation. The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his

sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995).

Plaintiff's placement in segregation while prison authorities evaluated his involvement in the two fights, or for Plaintiff's protection, does not implicate the categories of "protectible" interests identified in *Sandin*, i.e., the placement did not inevitably affect the duration of Plaintiff's sentence nor did it impose an atypical and significant hardship. As to the first category, even if Plaintiff were in segregation for fighting, he has not alleged a deprivation that will inevitably affect the duration of his sentence. A prisoner like Plaintiff, who is serving an indeterminate sentence for an offense committed after 2000, can accumulate "disciplinary time" for a major misconduct conviction. *See* Mich. Comp. Laws § 800.34. Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. *Id.* § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011).

As to the second category, Plaintiff has not alleged that he suffered a "significant and atypical deprivation." Confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th. Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin,* 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010) (61 days in segregation is not atypical and significant). It has also held, in specific circumstances, that confinement in segregation for a much longer period of time does not implicate a liberty interest. *See, e.g.*, *Baker,* 155 F.3d at 812-23 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke,* 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). Generally, only periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harris v. Caruso,* 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest); *Harden-Bey,* 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest).

Plaintiff's confinement in segregation for no more than 20 days is less than the 60-day period in *Joseph* that the Sixth Circuit held was *not* atypical and significant. Thus, Plaintiff's confinement did not trigger a right to due process.

For all these reasons, Plaintiff's claims relating to his placement in segregation are properly dismissed.

**IV.     Release from segregation**

Plaintiff claims that Defendants demonstrated deliberate indifference to a substantial risk of serious harm, in violation of the Eighth Amendment, when they released him

9

from segregation to the general population on September 25, 2018. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes*, 452 U.S. at 345-46. The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

An Eighth Amendment claim comprises objective and subjective components: (1) a sufficiently grave deprivation and (2) a sufficiently culpable state of mind. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Woods v. LeCureux*, 110 F.3d 1215, 1222 (6th Cir. 1997). A prison official cannot be found liable unless the official has acted with deliberate indifference; that is, the official must know of and disregard an excessive risk to inmate health or safety. *Farmer*, 511 U.S. at 837; *see also Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991) (deliberate indifference standard applies to all claims challenging conditions of confinement to determine whether defendants acted wantonly). The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference. *Farmer*, 511 U.S. at 837. Thus, the mental state required for an Eighth Amendment claim is not

10

actual intent, but something close to common-law recklessness. *Hubbert v. Brown*, Nos. 95-1983, 95-1988, 96-1078, 1997 WL 242084, at *5 (6th Cir. May 18, 1997) (relying on *Farmer*, 511 U.S. at 836 n.4.

Plaintiff's allegations against Defendants Anderson and Fuller evidence a risk of harm to Plaintiff and a deliberate indifference to that risk. Plaintiff states that Anderson and Fuller released Plaintiff to general population despite his repeated explanation that the general population would no longer be safe for him because of the September 21, 2018, incident with a gang member. Plaintiff suggests that Anderson and Fuller were deliberately indifferent to that risk when they placed Plaintiff back in general population anyway to free up bed space.

Accordingly, Plaintiff has stated a claim against Defendants Anderson and Fuller for deliberate indifference to a risk of harm to Plaintiff when they forced him out of segregation and back into the general population.

Although only Defendants Anderson and Fuller are alleged to have returned Plaintiff to the general population on September 25, Plaintiff contends that the other Defendants are liable as well. (Compl., ECF No. 1, PageID.10) ("Award compensatory and punitive damages, jointly and severally, against Defendants R. Rewerts, J. Winger, L. Becher, Lt. Dewald, CO Shaw, Anderson, Hoffman, Coffey, Fuller, Dr. Holmes (MD), Inspector John Doe (1), CO John Doe (2) [because] Defendants exposed the plaintiff to a substantial risk of harm when directing him to go back to general population . . . ."). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a

defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003); *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974); *Williams v. Hopkins*, No. 06-14064, 2007 WL 2572406, at *4 (E.D. Mich. Sept. 6, 2007); *McCoy v. McBride*, No. 3:96-cv-227RP, 1996 WL 697937, at *2 (N.D. Ind. Nov. 5, 1996); *Eckford-El v. Toombs*, 760 F. Supp. 1267, 1272-73 (W.D. Mich. 1991). Plaintiff does not allege how the Defendants, other than Anderson and Fuller, might be responsible for his return to general population. Accordingly, he has failed to state a claim against them.

Some of the Defendants might be the superiors of Anderson and Fuller or may have responded (or failed to respond) to Plaintiff's complaints about the actions of Anderson and Fuller to Plaintiff's satisfaction. However, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76

(6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).  Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  Plaintiff has failed to allege that any Defendants other than Anderson or Fuller engaged in any active unconstitutional behavior in connection with Plaintiff's return to general population.  Accordingly, he fails to state this Eighth Amendment claim against any Defendants other than Anderson or Fuller.

## V.     Inexperienced corrections officers

Plaintiff claims his unit was staffed by three inexperienced corrections officers, including Defendants Coffey and John Doe #2, the night Plaintiff was assaulted in his cell.  The three officers did not notice the assault.  Moreover, they did not notice Plaintiff leaving his cell to call his aunt and uncle even though Plaintiff was on loss-of-privileges and top-lock sanction at the time.

As explained above, Plaintiff has failed to allege that Defendants Coffey and John Doe #2 were deliberately indifferent to a risk of harm to Plaintiff, based on their alleged inexperience or otherwise.  Nonetheless, Plaintiff suggests that the other Defendants' failure to adequately staff the unit with experienced officers may evidence deliberate indifference to a risk of harm to Plaintiff.  (Compl., ECF No. 1, PageID.11) ("Inadequate staffing (rookies) can create a risk of substantial harm in a prison setting which is sufficient to qualify for deliberate indifference . . . .").

13

Plaintiff has failed to allege facts that support the inference that any Defendant was aware that the presence of "inexperienced" officers on Plaintiff's unit created a risk of harm to Plaintiff. He alleges no facts that show such a risk was obvious or that the Defendants had knowledge of a pattern of similar violations. *See, i.e., Board v. County Comm'rs of Bryan Cty. v. Brown,* 520 U.S. 397, 406-409 (1997); *Gray v. City of Detroit*, 399 F.3d 612, 617-619 (6th Cir. 2005); *Miller v. Calhoun Cty.*, 408 F.3d 803, 816-817 (6th Cir. 2005). "Allegations that a particular officer was improperly trained are insufficient to prove liability, as are claims that a particular injury could have been avoided with better training." *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 904 (6th Cir. 1998). At best, Plaintiff alleges any Defendants that had supervisory authority with respect to staffing the unit acted negligently. Negligence, however, is "not a violation of the plaintiff's rights under either the 8th or 14th Amendments." *Stewart v. Love*, 696 F.2d 43, 45 (6th Cir. 1982). Therefore, Plaintiff has failed to state a claim based on the alleged inexperience of the officers in his unit on the evening of September 28, 2018.

## VI.  Placement with an inmate with gender dysphoria

Plaintiff claims he suffered "emotional psychological injuries" and "mental issues" by forcing him to cell with an inmate with gender dysphoria, a circumstance Plaintiff describes as "problematic" and "unhealthy." (Compl., ECF No. 1, PageID.12.) Plaintiff's allegations do not show that he was subjected to conditions of confinement that denied him the minimal civilized measure of life's necessities. Moreover, absent physical injury, Plaintiff's claim for emotional injuries is barred by 42 U.S.C. § 1997e(e), which precludes any claim by a prisoner "for mental or emotional injury suffered while in custody without a prior showing of physical injury." *Id. See also Hardin-Bey v. Rutter*, 524 F.3d 789, 795-96 (6th Cir. 2008); *Taylor v. United States*, 161 F. App'x 483, 486-87 (6th Cir. 2007); *Jarriett v. Wilson*, 162 F. App'x 394, 400 (6th Cir. 2005); *Oliver v. Sundquist*, No. 00-6372, 2001 WL 669994, at *1 (6th Cir. June 7, 2001); *Siller v. Dean*,

14

No. 99-5323, 2000 WL 145167, at *2 (6th Cir. Feb. 1, 2000). Plaintiff alleges no physical injury. As a consequence, his claim for emotional damages is barred.

### VII. Failure to report the September 28 assault to police

Plaintiff contends that Defendants' failure to pursue prosecution of Jones and Mattlock violated Plaintiff's constitutional rights. Plaintiff alleges that Defendants would not report the incident to police because they did not consider it likely that the prosecutor would pursue charges for a simple prison assault. Plaintiff does not indicate why he did not report the incident to police.

Plaintiff "lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). "The failure to conduct a full and fair investigation and prosecution of an alleged crime does not state a claim unless there is a violation of another recognized constitutional right." *Smallwood v. McDonald*, No. 86-5522, 1986 WL 18183, at *1 (6th Cir. Oct. 9, 1986)[2]; *see also Sattler v. Johnson*, 857 F.2d 224, 227 (4th Cir. 1988) ("Sattler's counsel suggested that Sattler had an enforceable right as a member of the public at large and as a victim to have the defendants criminally prosecuted. . . . There is, of course, no such constitutional right . . . ."). Accordingly, Plaintiff has failed to state a claim based on Defendants' failure to pursue prosecution of Jones and Mattlock.

### VIII. Dr. Holmes' deliberate indifference to Plaintiff's serious medical needs

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment

---

[2] "[A]nother recognized constitutional right" would exist, for example, if Plaintiff made an allegation that the failure to investigate was based on an impermissible reason such as race or other characteristic that would implicate the equal protection guarantee. *Burchett v. Self*, No. 94-5058, 1994 WL 276865, at *2 (6th Cir. June 21, 1994).

is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cty.*, 534 F.3d 531, 540 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g., Rouster v. Cty. Of Saginaw*, 749 F.3d 437, 466, 451 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a

prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Saginaw Cty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

Plaintiff alleges that he suffered severe injuries following the September 28, 2018, fight. Dr. Holmes saw Plaintiff just once after the fight. Plaintiff alleges that the treatment Dr. Holmes provided amounted to no treatment at all. Moreover, Plaintiff contends that the delay in proper treatment caused by Dr. Holmes' deliberate indifference has caused Plaintiff significant harm. The Court concludes that Plaintiff has sufficiently stated an Eighth Amendment claim against Defendant Holmes.

Plaintiff contends the other Defendants are also liable for the failure to properly treat Plaintiff's severe injuries. Even if Plaintiff has adequately alleged the objective component with regard to the other Defendants, he has utterly failed to satisfy the subjective component. Plaintiff alleges that each of the other Defendants, to the extent they became aware of his injuries,

made sure that Plaintiff was seen by health care personnel. Accordingly, Plaintiff has not alleged that those Defendants deliberately disregarded his serious medical needs. Therefore, Plaintiff has failed to state a deliberate indifference claim against any defendant other than Dr. Holmes.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Rewerts, Winger, Dewald, Becher, Hoffman, John Doe #1, Shaw, Coffey, and John Doe #2 will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, all claims against the remaining Defendants except for Plaintiff's claim that Defendants Anderson and Fuller violated Plaintiff's Eighth Amendment rights by their deliberate indifference to a risk of harm to Plaintiff when they returned Plaintiff to the general population and Plaintiff's claim that Defendant Holmes was deliberately indifferent to Plaintiff's serious medical needs.

An order consistent with this opinion will be entered.

Dated: June 9, 2020 /s/ Paul L. Maloney
Paul L. Maloney
United States District Judge