UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACK BIERI #288329,

        Plaintiff,                                      Hon. Paul R. Maloney

v.                                                        Case No. 1:20-cv-415

W. ANDERSON, et al.,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

The matters before the Court are the Motion for Summary Judgment for Failure to Exhaust Administrative Remedies of Defendant Scott Holmes, M.D., (ECF No. 15) and the Motion for Summary Judgment based on Plaintiff's Failure to Exhaust his Administrative Remedies of Defendants C/O Fuller and RUM Anderson (ECF No. 19). Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that both motions be **GRANTED**.

**BACKGROUND**

Plaintiff, a prisoner incarcerated with the Michigan Department of Corrections (MDOC), filed a complaint against MDOC medical and corrections staff based on incidents that occurred while he was incarcerated at the Carson City Correctional Facility (DRF) in September 2018. Following initial review pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A and 42 U.S.C. § 1997e(c), Plaintiff's remaining claims are: (1) an Eighth Amendment claim against Defendant Holmes for deliberate indifference to Plaintiff's serious medical need; and (2) Eighth Amendment failure-to-protect claims against Defendants Fuller and Anderson.

1

Plaintiff alleges that he was involved in a fight with a prison gang member while working in the kitchen at DRF on September 21, 2018. As a result, Plaintiff was placed in segregation. Plaintiff alleges that he complained to Defendant Dr. Holmes about neck and shoulder pain following the fight, but Plaintiff was not taken to the hospital or x-rayed. Plaintiff alleges that the doctor indicated that Plaintiff's head injury was not serious. Plaintiff never saw Dr. Holmes after the initial examination.

When Defendants Anderson and Fuller asked Plaintiff if he wanted to return to general population, Plaintiff told them that he did not want to leave segregation because he feared for his safety, expecting retaliation from other gang members. On September 24, 2018, Defendants Anderson and Fuller asked Plaintiff to return to general population. They told Plaintiff that they lacked bed space in segregation and that, if he refused to return to general population, they would issue him a ticket for disobeying a direct order. Fuller issued Plaintiff a misconduct ticket after Plaintiff refused. On September 25, 2018, Anderson and Fuller returned and told Plaintiff that he was moving back to general population. Plaintiff told them that he feared for his safety.

On September 28, 2018, after Plaintiff was placed back in general population, prisoners Jones and Mattlock came to his cell. When Plaintiff opened his cell, prisoner Mattlock forced his way into Plaintiff's cell and fought Plaintiff for three to four minutes while prisoner Jones acted as a lookout.

Plaintiff was transferred to a different facility at some point in October or November 2018.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized that the party with the burden of proof "must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting *Cockrel v. Shelby Cty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

Pursuant to 42 U.S.C. § 1997e(a), a prisoner must exhaust all available administrative remedies before filing a lawsuit with respect to prison conditions under 42 U.S.C. § 1983. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA," which the defendant

3

bears the burden of establishing. *Id*. With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion," defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated:

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust." The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

MDOC Policy Directive 03.02.130 sets forth the applicable grievance procedure for prisoners in MDOC custody. Prior to submitting a grievance, a prisoner is required to "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue falls within the jurisdiction of the Internal Affairs Division in Operations Support Administration." Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ P. If this attempt is unsuccessful (or is inapplicable), the prisoner may submit a Step I grievance. *Id.* The Step I grievance must be submitted within five business days after attempting to resolve the matter with staff. *Id.* at ¶ V. The issues asserted in a grievance "should be stated briefly but concisely," and the "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R.

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III. *Id.* at ¶ FF. The Step III grievance must be submitted within ten business days after

receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.*

## I. Defendant Holmes

Defendant Holmes argues that Plaintiff failed to properly exhaust his deliberate indifference claim. In support of his motion, Defendant Holmes attaches a copy of Plaintiff's Step III Grievance Report showing grievances that Plaintiff exhausted through Step III. (ECF No. 15-1.) The report shows that Plaintiff did not exhaust a grievance through Step III relating to any incident that occurred at DRF in September 2018. The only Step III grievances shown on the report were filed in 2017 and related to issues that arose at other facilities. (ECF No. 15-1 at PageID.88–89.)

In his response, Plaintiff argues that he did file grievances and that he has copies of his Steps I, II, and III grievance forms. (ECF No. 17 at PageID.100.) Plaintiff also states, however, that, after he was transferred from DRF, he was never given copies of the grievances that he filed, and he contacted Richard Russell's office in Lansing regarding the length of time the MDOC had to provide him with a Step II/III response. Regardless of his response, Plaintiff has not presented any evidence indicating that he actually filed a Step I grievance against Defendant Holmes. While Plaintiff provided some documentation in response to Defendants Anderson and Fuller's motion for summary judgment, he failed to provide any evidence to rebut Defendant Holmes's showing that Plaintiff did not file and exhaust a grievance against him through all three steps of the MDOC's grievance procedure. In addition, Plaintiff has offered no evidence, such as an affidavit or declaration, to show that the grievance procedure was not available to him. *See Ross v. Blake*, 136 S. Ct. 1850, 1858–60 (2016) (explaining that a grievance procedure may be rendered unavailable where it "operates as a simple dead end," is "so opaque that it becomes, practically speaking, incapable of use," or "prison administrators thwart inmates from taking advantage of it through

5

machination, misrepresentation, or intimidation"). In short, Plaintiff has failed to show that he even attempted to exhaust a grievance as to Defendant Holmes. Accordingly, Defendant Holmes is entitled to summary judgment based on Plaintiffs failure to exhaust.

## II. Defendants Anderson and Fuller

Defendants Anderson and Fuller likewise submit a Step III Grievance Report showing that Plaintiff did not exhaust a grievance to Step III relating the incidents that occurred at DRF in September 2018. In his response, Plaintiff again states that he followed the MDOC grievance procedure. Plaintiff's argument, as the Court understands it, is that his grievance efforts were hindered by DRF Grievance Coordinator L. Becher's failure to provide him a Step II grievance appeal form in a timely manner. (ECF No. 23 at PageID.140.)

As noted above, Plaintiff filed several documents in support of his response. In addition, as part of their reply, Defendants provided copies of Step I and Step II grievance documents that Plaintiff filed during September 2018 at DRF. The first grievance, DRF-18-10-2568-19C, pertains to Plaintiff's missing padlock that had been with his duffel bag. (ECF No. 27-2.) This grievance is not relevant Plaintiff's claims against Defendants. The second grievance, Grievance DRF-18-10-2731-27A (2731 Grievance), submitted on October 3, 2018, was, as Defendants acknowledge, at least "tangentially related" to Plaintiff's claims against Defendants. (ECF No. 27 at pageID.187.) In the 2731 Grievance, Plaintiff complained about being issued a misconduct ticket for refusing to leave segregation due to his fear for his safety and Defendants' disregard for his safety in returning him to general population housing, where he was re-assaulted a few days later. (ECF No. 23-1 at PageID.147–48; ECF No. 27-3.) The 2731 Grievance was rejected at Step I as non-grievable under the MDOC's grievance policy. More specifically, the response interpreted Plaintiff's grievance as complaining about the misconduct ticket and the sanction Plaintiff received following the hearing on that ticket. The respondent advised Plaintiff that his "avenue of recourse is through the rehearing

6

appeal process not through the grievance process." (ECF No. 23-1 at PageID.149.) However, the portion of the grievance pertaining to Plaintiff being forced into an unsafe situation was grievable. The grievance was returned to Plaintiff on or about October 23, 2018. (ECF No. 23-1 at PageID.147.) It is not clear whether Plaintiff was still housed at DRF at this time. In any event, Plaintiff did not file a Step II appeal until December 22, 2019—more than a year later—when he was housed at Lakeland Correctional Facility. (*Id.* at PageID.150–54.) The Step II appeal was rejected on January 31, 2020 as untimely. (*Id.* at PageID.155.) The response noted that the Step I grievance was received on October 18, 2018, and answered on October 22, 2018; that the Step II deadline was November 7, 2018 (although some delay could have been expected due to Plaintiff's transfer); and that the Step II appeal was not received until January 15, 2020. (*Id.*)

Plaintiff presents no evidence contradicting the Step III Grievance Report that Defendants submitted in support of their motion, which shows that Plaintiff did not file a Step III appeal of the January 15, 2020 rejection. Moreover, Plaintiff has not submitted an affidavit or declaration explaining the more than one-year delay in filing his Step II appeal. Proper exhaustion of administrative remedies "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90 (internal quotation marks omitted); *see also Weatherspoon v. Strahan*, No. 18-2210, 2019 WL 5306842, at *1 (6th Cir. June 4, 2019) (stating that a prisoner incarcerated with the MDOC must "pursue a grievance through all three steps of the grievance process" to properly exhaust a claim). Accordingly. Defendants Anderson and Fuller's motion should be granted.

## CONCLUSION

For the foregoing reasons, I recommend that Defendants' Motions for Summary Judgment based on Plaintiff's failure to exhaust his administrative remedies (ECF Nos. 15 and 19) be

7

**granted,** that Plaintiff's remaining claims be **dismissed without prejudice**, and that this case be **closed**. I further recommend that Defendant Holmes's motion to strike Plaintiff's unauthorized sur-reply (ECF No. 28) be **granted**.

## NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Dated: November 16, 2020                                    /s/ Sally J. Berens
                                                            SALLY J. BERENS
                                                            U.S. Magistrate Judge